UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

XEROX CORPORATION                                                          PLAINTIFF

v.                                                          CIVIL ACTION NO. 3:15cv488-DPJ-FKB

PIRANHA BUSINESS CARDS, LLC, et al.                                        DEFENDANTS

ORDER

This breach-of-contract action is before the Court on Plaintiff Xerox Corporation's

Motion for Summary Judgment [33].  There is no dispute that New York law applies.  But there

are three issues under New York law for which the Court lacks sufficient analysis:  (1) whether

the disputed contracts were leases or disguised security agreements; (2) whether the parties'

intent impacts whether a security interest existed; and (3) whether Defendants waived this

argument by the terms of their contracts.

I.        Security Agreements or Leases

Relying on *Midlantic Commercial Leasing Corporation v. Architectural Shapes, Inc.*,

Defendants argue that the disputed contracts were disguised security agreements as defined by

N.Y. U.C.C. Law § 1-201(37).  No. 89-0399, 1990 WL 42257, at *3 (E.D. Pa. Apr. 10, 1990).  If

so, then Defendants claim that Xerox violated their rights under the Uniform Commercial Code

("U.C.C.") and is precluded from recovery.  While *Midlantic* applies New York law, it appears

to analyze a version of the U.C.C. that was no longer current when these contracts were signed

between 2011 and 2014.

The version of the U.C.C. that appears to have been in effect when the parties entered

each of these contracts makes a distinction between a true lease and a transaction that creates a

security interest:

Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and:

> (i) the original term of the lease is equal to or greater than the remaining economic life of the goods,
>
> (ii) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods,
>
> (iii) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement, or
>
> (iv) the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

N.Y. U.C.C. Law § 1-201(37)(a) (McKinney eff. July 1, 2001–Dec. 16, 2014).[1]

These provisions raise a host of issues the Court is reluctant to address sua sponte. But based on an initial review of the law, it appears that New York courts would consider the disputed contracts under a sequential analysis beginning with the two-prong bright-line test outlined in section 1-201(37)(a). *See id.* The first prong—a non-terminable contract—exists in this case. The second prong asks whether the contract provides the lessee any of the rights enumerated in section 1-201(37)(a)(i)–(iv). If it does, then the contract is a security agreement per se. *See In re Ajax Integrated, LLC*, No. 14-30435, 2016 WL 4186598, at *6 (Bankr. N.D.N.Y. Aug. 4, 2016).

---

[1]"The current N.Y. UCC § 1–203, which provides for the same Bright Line Test, was enacted on December 17, 2014, and applies only to transactions entered into on or after that date." *In re Ajax Integrated, LLC*, No. 14-30435, 2016 WL 4186598, at *6 n.12 (Bankr. N.D.N.Y. Aug. 4, 2016).

Assuming this analysis is correct so far, the present dispute focuses on the fourth residual interest—whether the purchase price was nominal.  The statute provides additional guidance on that issue, stating, "Additional consideration is not nominal if . . . when the option to become the owner of the goods is granted to the lessee the price is stated to be the fair market value of the goods determined at the time the option is to be performed."  N.Y. U.C.C. Law § 1-201(37)(c)(i)(B) (McKinney eff. July 1, 2001–Dec. 16, 2014).  But the section also states that "[a]dditional consideration *is* nominal if it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised."  *Id.* (emphasis added).

In this case, the "Purchase Option" in the subject instruments was for fair market value. Lease I [33-1] at 1; *see also* Lease II [33-7] at 1.  The Court desires briefing on whether this means the price was not nominal based solely on the fair-market-value clause of section 1-201(37)(c)(i)(B), or whether the Court should still consider the predictable-cost-of-performing clause of that same section.  If the latter, the parties will need to analyze that test.

Even assuming the payment was not nominal and Defendants fail the bright-line test, it appears that the inquiry is not yet at an end but that "the court must apply a contextual analysis that examines the facts and circumstances of the case to determine if a security interest was, in fact, created."  *In re Ajax Integrated, LLC*, 2016 WL 4186598, at *6 (citing *In re WorldCom, Inc.*, 339 B.R. 56, 65 (Bankr. S.D.N.Y. 2006); *In re QDS Components, Inc.*, 292 B.R. 313, 333 (Bankr. S.D. Ohio 2002) (citing *In re Triplex Marine Maint., Inc.*, 258 B.R. 659, 669 (Bankr. E.D. Tex. 2000))).  The parties should address whether New York law requires this additional step if the bright-line test does not establish the existence of a security interest.

If the contextual analysis applies, its contours are murky.  *See In re QDS Components, Inc.*, 292 B.R. at 341 (noting that code is "poorly drafted" and discussing various judicial approaches) (citation omitted).  In *In re Ajax Integrated, LLC*, the court applied New York law and observed that the "key issue for the court to determine under the contextual analysis is whether the lessor retains a meaningful residual interest at the end of the lease term."  *In re Ajax Integrated, LLC*, 2016 WL 4186598, at *6 (citation and internal quotation marks omitted).  That approach has been generally followed elsewhere, though the actual tests have been articulated in differing ways.  *See In re QDS Components, Inc.*, 292 B.R. at 340–43 (collecting cases).  The parties should address how a New York court would articulate the residual-interest test and then analyze that test in the context of the present case.

II.     Intent

According to Xerox, the contracts themselves reflect the parties' intent to enter a lease, not a security agreement.  True enough, the contracts use the term "finance leases."  But the Court has two questions on this front.  First, the authority Xerox cites states that parties can turn a non-finance lease into a finance lease with language to that effect.  But can that language turn a security agreement under section 1-201(37)(a) into a finance lease? *See Citipostal, Inc. v. Unistar Leasing*, 724 N.Y.S.2d 555, 558 (N.Y. App. Div. 2001) (holding that agreement using term "finance lease" was actually a security agreement).  Second, to what extent should the parties' intent control after the amendments to the U.C.C.? *See In re Ecco Drilling Co.*, 390 B.R. 221, 226–27 (Bankr. E.D. Tex. 2008); *In re QDS Components, Inc.*, 292 B.R. at 329–30.

III.    Waiver

Xerox argues that Defendants waived "any defenses to their payment obligations."  Pl.'s Reply [41] at 6.  But to the extent Article 9 governs, certain defenses may not be waived.  N.Y. U.C.C. Law § 9-602 ("[T]o the extent that they give rights to a debtor or obligor and impose duties on a secured party, the debtor or obligor may not waive or vary the rules stated in . . . Sections 9-610(b) [commercially reasonable disposition], 9-611 [notification before disposition of collateral], [and] 9-613 [contents and form of notification before disposition of collateral] . . . ."); *id.* § 9-102(59) (eff. July 1, 2001–Dec. 16, 2014) ("'Obligor' means a person that, with respect to an obligation secured by a security interest in or an agricultural lien on the collateral, (i) owes payment or other performance of the obligation, (ii) has provided property other than the collateral to secure payment or other performance of the obligation, or (iii) is otherwise accountable in whole or in part for payment or other performance of the obligation."); *ESL Fed. Credit Union v. Bovee*, 801 N.Y.S.2d 482, 486 (N.Y. Sup. Ct. 2005) ("[A] guarantor may not waive the defense of commercial reasonableness [under the] Uniform Commercial Code. . . .").  And while Defendants raised some of these defenses in their summary-judgment response, Xerox did not specifically address their applicability, instead relying solely on the waiver but not considering the impact of section 9-602.  The parties should address whether, if Article 9 governs, Defendants' non-waivable Article 9 defenses impact Xerox's claims under the guaranty.

IV.    Conclusion

To be clear, the Court has not conducted an exhaustive review of this body of law, and what it has seen so far seems inconsistent.  Rather than act without input, the Court welcomes

the parties' insights on the above-referenced issues.  The parties are not limited to the cases cited

in this Order, which are provided merely for context.  Finally, the Court believes that a

telephonic status conference would help before a briefing schedule is adopted.  The parties

should examine the issues in advance of this call, to the extent necessary to frame the discussion,

and contact Courtroom Deputy Shone Powell within ten days of the entry of this Order to set the

case for a telephonic conference.

       **SO ORDERED AND ADJUDGED** this the 28th day of September, 2016.

                              s/ *Daniel P. Jordan III*
                              UNITED STATES DISTRICT JUDGE